| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Rebecca Tomilowitz,  Bar 150127**<br>**Colmenares & Tomilowitz**<br>**1321 Post Avenue, Suite 201**<br>**Torrance, CA 90501**<br>**310 851-8072 Fax: 310 851-8078**<br>**rtomilowitz@aol.com** | |

☐ Individual appearing without attorney
☑ Attorney for:  Debtor

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>     **David Saravia**<br><br><br><br>                          Debtor(s). | CASE NO.: **2:15-bk-25514 WB**<br><br>CHAPTER: **13** |
|---|---|
| | **DEBTOR'S NOTICE OF MOTION AND<br>MOTION TO AVOID JUNIOR LIEN ON<br>PRINCIPAL RESIDENCE<br>[11 U.S.C. § 506(d)]** |
| | DATE:  **March 9, 2016**<br>TIME:   **1:30 p.m.**<br>COURTROOM:  **1375** |

1. TO: <u>the Honorable Julia Brand, the Chapter 13 Trustee, the secured creditors,</u>

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an order granting the relief set forth in the motion and accompanying supporting documents served and filed herewith.

3. **Hearing Location:**
   ☑ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. *(If you do not have an attorney, you may wish to consult one.)*

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: February 8, 2016

**COLMENARES & TOMILOWITZ**
Printed name of law firm *(if applicable)*
**Rebecca Tomilowitz**
Printed name of Debtor or attorney for Debtor

_____
Signature of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR:    David Saravia    )**

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"):**  Specialized Loan Servicing, LLC, as agent for the Bank of New York Mellon fka The Bank of New York, as successor trustee to JP Morgan Chase Bank, NA, as trustee for the Benefit of the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2006-F

**1. Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

      Street address:   **817 E 115th Street**
      Unit number:  _____
      City, state, zip code:  **Los Angeles, CA  90059,   APN: 6072-011-022**

Legal description of Property for document recording number :  Lot 23 of Tract No. 9083, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 177 Pages 26, 27 and 28 of Maps, in the Office of the County Recorder of said County.

☐ See attached page for legal description of Property or document recording number.

**2. Case History:**
    a. A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☑ 13 was filed on  **10/7/15**

    b. ☐ An Order of Conversion to chapter 13 was entered on *(specify date)*: _____

**3. Grounds for Avoidance of Junior Lien:**

    a. As of  10/7/15, the Property is subject to the following liens in the amounts specified securing the debt against the Property, that the Debtor seeks to have treated as indicated:

        (1)   **Seterus, Inc. [authorized agent for Fannie Mae]**  in the amount of $  **342,136.79 per POC, Claim 1-1** .

        (2)   **Specialized Loan Servicing, LLC**  in the amount of $  **84,121.20**  ☑ is ☐ is not to be avoided;

        (3)  *(Name of holder of 3rd lien)* _____  in the amount of $ _____ ☐ is ☐ is not to be avoided;

           ☐ See attached page for additional lien(s).

        As of  **7/29/15** , Property is worth no more than $  **260,000.00** .

    b. As a result, Respondent's Lien encumbering the Property is wholly unsecured.

    c. **Evidence in Support of Motion:**

        (1) ☑ The amount of the lien identified in paragraph 3(a)(1) is based on  **creditor's filed POC, Claim 1-1 and recorded deed of trust** , attached hereto and identified as Exhibit  **1** .

        (2) ☑ The amount of the lien identified in paragraph 3(a)(2) is based on  **billing statement and recorded deed of trust** , attached hereto and identified as Exhibit  **2** .

        (3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on *(type of evidence)* _____ , attached hereto and identified as Exhibit ___ .

        (4) ☑ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit  **1 and 2** .

        (5) ☑ The value of the Property from paragraph 3(b) is based on  **appraisal report** , attached as Exhibit  **3** .

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                          **F 4003-2.4.JR.LIEN.MOTION**

(6) ☑ Debtor submits the attached Declaration(s).

(7) ☐ Other evidence *(specify/identify supplemental evidence)*: _____ attached as Exhibit ___.

**d. WHEREFORE, Debtor prays that this court issue an order granting the this motion and establishing that:**

(1) The Property is valued at no more than *(requested value)* $ __260,000.00__ .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☐ completion of the chapter 13 plan, or ☑ receipt of a chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a non-priority general unsecured claim(s) in the amount per the filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon: Debtor's ☐ completion of the chapter 13 plan, or ☑ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☐ completion of the chapter 13 plan, or ☑ receipt of a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior lien(s).

**e.** ☐ See attached continuation page for additional provisions.

Date: February 8, 2016

Respectfully submitted,

*[signature]*

Signature of Debtor or attorney for Debtor

:Rebecca Tomilowitz
Printed Name of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 3                    **F 4003-2.4.JR.LIEN.MOTION**

## SUPPORTING DECLARATION OF DAVID SARAVIA

I, David Saravia, hereby declare and state as follows:

1. I am the DEBTOR who caused to be filed a voluntary petition under Chapter 13, Title 11 United States Code on October 7, 2015, case no. 15-25514 WB (the "Case")

2. At the time the Case was filed, it was done so, reasonably believing such was needed to reorganize our financial affairs including the subject Real Property.

3. The Real Property is my principal residence located at 817 E 115th Street, Los Angeles, CA 90059 APN: 6072-011-022 ( "Real Property").

4. I originally purchased the REAL PROPERTY in 2007 upon which I incurred the encumbrance with the senior creditor, Seterus, Inc., servicer for the Mortgage Electronic Registration Systems, Inc., successor in interest to Countywide Home Loans (hereinafter referred to as Senior Creditor) and a junior lien with junior creditor, Specialized Loan Servicing, LLC successor in interest to Countywide Home Loans, (hereinafter referred to as "SLS #2") Each of these creditors have recorded liens against the Real Property with the Los Angeles County Recorder's Office.

5. The debt owed on the First Deed of Trust, held by Senior Creditor is approximately $342,136.79, reflected in the creditor's filed Proof of claim dated November 16, 2015. See Exhibit "1" to this declaration and incorporated herein by this reference. Also attached to Exhibit "1" is a copy of the deed of trust which shows a recordation date of June 2, 2006, Instrument No: **2006-01213712.**

6. The debt owed on the Second Deed of Trust, held by SLS # 2 is approximately $84,121.20 which is reflected in the billing statement dated August 1, 2015.  See Exhibit "2" to this declaration and incorporated herein by this reference. Also attached to Exhibit "2" is a copy of the subject junior deed of trust which identifies the recordation date as being June 2, 2006, Instrument No: **2006-01213713.**

7. In making this Motion, I relied upon the appraiser's opinion that is attached and incorporated herein as Exhibit "3," to the Declaration filed concurrently herewith.  Further, I relied upon my understanding as a homeowner that the value of the Real Property, as set forth in my Schedules A and Schedule D, is comparable to other home values in our area, as of the commencement of this case.  I reasonably believe the values may continue to decline and will be lower as of the

1  confirmation of my Chapter 13 Plan.

2        8.    I therefore, believe a valuation of $260,000.00 is fair and reasonable for the purpose

3  of valuation of the Real Property and classification of SLS # 2  a Class Five general unsecured creditor

4  in the Chapter 13 Plan.

5        9.    In the course of this Chapter 13 case, and in preparation for this Motion, I spoke with

6  local Realtors, researched the local listings of pending sales and closed sales and, as a homeowner,

7  determined the fair market value of the Real Property to be approximately $260,000.00, consistent

8  with the appraised value that is attached Exhibit "3," to the Declaration filed concurrently herewith.

9        I declare under penalty of perjury, under the laws of these United States of America and

10  California, that the foregoing is true and correct, such that if called to testify, I could and would

11  testify thereto.

12  Executed this 17 day of November 2015 in Torrance, California

13

14  _____
   David Saravia

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "1"

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Central District of California | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor:<br>David Saravia aka David Jesus Saravia | Case Number:<br>2:15-bk-25514-WB | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>SETERUS, INC. as the authorized subservicer for FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"),Creditor c/o Seterus, Inc. | COURT USE ONLY |
| Name and address where notices should be sent:<br>Federal National Mortgage Association ("Fannie Mae")<br>c/o Seterus, Inc., servicer<br>P.O. Box 1047<br>Hartford, CT 06143<br>Telephone number:  (888) 952-7387    email:  derek.ghattas@seterus.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:        email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**        $            342,136.79

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Money Loaned-Real Property
    (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>5  8  5  3 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4) | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: |
|---|---|
| Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information. | $            15,068.45 |
| Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other<br>Describe:  817 East 115th Street, Los Angeles, CA 90005 | Basis for perfection:  Deed of Trust |
| Value of Property: $_____ | Amount of Secured Claim: $        342,136.79 |
| Annual Interest Rate  3.000 % ☐Fixed  or ☑Variable<br>(when case was filed) | Amount Unsecured: $_____ |

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| | | |
|---|---|---|
| ☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). |
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). |

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)                                                                                2

| 7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted copies of documents** providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* |
|---|

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                        (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                                      (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Nichole L. Glowin, Esq. SBN 262932
Title:  Attorney for Creditor
Company:  Wright, Finlay & Zak, LLP                                    /s/ Nichole L. Glowin                    11/16/2015
Address and telephone number (if different from notice address above):  (Signature)                          (Date)
 4665 MacArthur Court, Ste. 280
 Newport Beach, CA 92660
Telephone number: (949) 477-1400    email: nglowin@wrightlegal.net
*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

| **INSTRUCTIONS FOR PROOF OF CLAIM FORM** |
|---|
| *The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor,* |
| *exceptions to these general rules may apply.* |
| Items to be completed in Proof of Claim form |

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

This page is part of your document - DO NOT DISCARD

**06 1213712**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**06/02/06 AT 08:00am**

## TITLE(S) :



L E A D   S H E E T

FEE $ ~~7 0~~
DAF $
C-20

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9____

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

**SOUTHLAND TITLE**

Recording Requested By:
A. GONZALES

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
EDNA G. LACHICA

—————————————————— [Space Above This Line For Recording Data] ——————————————————

062771LD                                    00013802002605006
(Escrow/Closing #)                          [Doc ID #]

# DEED OF TRUST

MIN 1000157-0006712811-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MAY 27, 2006          , together with all Riders to this document.

(B) "Borrower" is
DAVID DE JESUS SARAVIA, AND RUTH ICELA SARAVIA, HUSBAND AND WIFE AS JOINT TENANTS

---

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3005 1/01
CONV/VA





06 1213712    16032059

DOC ID #: 00013802002605006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

06 1213712

DOC ID #: 00013802002605006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

06 1213712

DOC ID #: 00013802002605006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

06 1213712

DOC ID #: 00013802002605006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

06 1213712

*12*

DOC ID #: 0001380200260500

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

06 1213712

DOC ID #: 00013802002605006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

06 1213712

14

DOC ID #: 0001380200260506

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

06 1213712

DOC ID #: 00013802002605006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

    NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

    22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

VMP®  -6A(CA) (0207)          CHL (08/05)          Page 13 of 16                    Form 3005 1/01

*16*

DOC ID #: 00013802002605006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

06 1213712

DOC ID #: 00013802002605006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DAVID DE JESUS SARAVIA                        -Borrower

_____ (Seal)
RUTH ICELA SARAVIA                           -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

VMP -BA(CA) (0207)       CHL (08/05)       Page 15 of 16                    Form 3005 1/01

06 1213712

Exhibit "2"

# SLS

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

To obtain information about your account, contact SLS at:
1-800-306-6059 or visit our website at www.sls.net.
SLS accepts calls from relay services on behalf of hearing
impaired borrowers.

**Mortgage Statement**
Statement Date: 07/20/15

+ █████████████████████████ 5 P1

DAVID DE JESUS SARAVIA
817 E 115TH ST
LOS ANGLES CA 90059-2303

| | |
|---|---|
| Account Number | ████54152 |
| Payment Due Date | 08/01/15 |
| **Total Amount Due** ‡ | **$3,925.60** |

If payment is received after 08/16/15, $0.00 late fee will be charged.

15-25514

Property Address:
817 E 115TH ST
LOS ANGELES     CA 90059

## Account Information

| | |
|---|---|
| Outstanding Principal | $84,121.20 |
| Escrow Balance | $0.00 |
| Partial Payment (Suspense)* | $0.00 |
| Deferred Principal: | $11,498.03 |
| Deferred Interest: | $0.00 |
| Other Deferred Amounts: | $0.00 |
| Interest Rate (Until 05/01/2016) | 2.000% |
| Prepayment Penalty | No |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $0.00 |
| Interest | $140.20 |
| Escrow (for Taxes and Insurance) | $0.00 |
| Optional Product | $0.00 |
| **Regular Monthly Payment** | **$0.00** |
| Total New Fees Charged | **$140.20** |
| Past Due Amounts | $3,785.40 |
| Partial Payment (Suspense)* | $0.00 |
| **TOTAL AMOUNT DUE** ‡ | **$3,925.60** |

## Transaction Activity (06/19/15 to 07/20/15)

| Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/ Charges | Partial Payment (Suspense)* |
|---|---|---|---|---|---|---|---|---|
| | *** NO TRANSACTION TO REPORT *** | | | | | | | |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Partial Payment (Suspense)* | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

## Important Messages

You are currently due for the 05/01/13 payment.

**\* Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage. However, if the loan is in foreclosure, unless funds are received pursuant to an agreed upon loss mitigation program, any additional funds received will be returned to you.

**‡ Amount to bring loan current:** Please note, if your account is past due, this amount may not include all fees or other amounts necessary to fully reinstate your loan. Please contact SLS at 1-800-306-6059 for a full reinstatement quote.

## **Delinquency Notice**

**If You Are Experiencing Financial Difficulty:** You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of July 20, 2015 you are 810 days delinquent on your mortgage loan.

Recent Account History
- Past due amount as of 02/01/15: $3,084.40
- Payment due 03/01/15: Amount Due $140.20
- Payment due 04/01/15: Amount Due $140.20
- Payment due 05/01/15: Amount Due $140.20
- Payment due 06/01/15: Amount Due $140.20
- Payment due 07/01/15: Amount Due $140.20
- 08/01/15: Current Payment Due $140.20
- Total Unpaid Fees, Charges, and Uncollected Escrow Amount: $0.00
- **Total $3,925.60 due. You must pay this amount to bring your loan current.**‡

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

**This page is part of your document - DO NOT DISCARD**

**06 1213713**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**06/02/06 AT 08:00am**

TITLE(S) :



L E A D    S H E E T

FEE    FEE $ 50  0
      DAF $ 4
      C-20            13

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

Southland Title Corp.

2

WHEN RECORDED MAIL TO:

06 1213713

Countrywide Home Loans, Inc.
P.O. Box 10423
Van Nuys, CA 91410-0423

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## TITLE(S)

## DEED OF TRUST AND ASSIGNMENT OF RENTS

16032059

6072-011-022

**"This Deed of Trust Is 2nd
and subject to a 1st Deed
of Trust recording concurrently
herewith."**

06/02/06

**SOUTHLAND TITLE**

Recording Requested By:
A. GONZALES

3

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
EDNA G. LACHICA

─────────────── [Space Above This Line For Recording Data] ───────────────

                    062771LD                    00013802003405006
                 [Escrow/Closing #]                  [Doc ID #]

## DEED OF TRUST AND ASSIGNMENT OF RENTS

                    MIN 1001337-0001349850-9

This Deed of Trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 27th         day of MAY, 2006         , between
DAVID DE JESUS SARAVIA, AND RUTH ICELA SARAVIA, HUSBAND AND WIFE AS
JOINT TENANTS

whose address is.
817 EAST 115TH STREET, LOS ANGELES, CA 90005
herein called "Trustor,"
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
herein called "Trustee," and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")
a Delaware corporation with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**MERS is the "Beneficiary"** under this Deed of Trust and is acting solely as a nominee for
Countrywide Bank, N.A.

("Lender" or "you") and its successors and assigns, with an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of LOS ANGELES                       , County of
  LOS ANGELES                       , State of California, having the street address of
817 EAST 115TH STREET, LOS ANGELES, CA 90005

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)(d)                    Page 1 of 10                    Initials: DJS





06 1213713    16032059

4

DOC ID #: 00013802003405006

and more specifically described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Lot(s) 26 of Tract No. 9083, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 177 Page(s) 26, 27 and 28 of Maps, in the office of the County Recorder of said County.

Parcel ID Number: 6072-011-022                    together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property."

    TRUSTOR UNDERSTANDS and agrees that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by Trustor in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

1.     THIS DEED OF TRUST SECURES:

    a.    All of the obligations of Trustor in favor of Lender or order under the terms of a revolving credit agreement dated MAY 27, 2006              , herein called Agreement. The Agreement provides, among other things, for the payment of all sums advanced by Lender from time to time pursuant to the Agreement and for the payment of interest. The maximum principal obligation under the Agreement to be secured by this Deed of Trust at any one time is
EIGHTY FIVE THOUSAND and 00/100
Dollars ($ 85,000.00         ) unless Lender, with Trustor's written consent, hereafter increases this amount. Advances made by Lender to protect the security of this Deed of Trust or to preserve the Property shall not be subject to the limitation of the preceding sentence.

    The security of this Deed of Trust shall not be affected by the extension, renewal or modification from time to time of the obligations, instruments or agreements described above.

    b.    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary, direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in interest to Trustor) whether created directly or acquired by assignment if the document evidencing such obligation or liability or any other writing signed by Trustor (or any successor in interest to Trustor) specifically provides that said obligation or liability is secured by this Deed of Trust.

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                        Page 2 of 10                    Initials: QJS

06 1213713

5

DOC ID #: 00013802003405006

c. > Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d.    Payment of all sums to be expended by the Lender or Trustee pursuant to the terms hereof.

2.    **TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

a.    To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.    To provide, maintain and deliver to Lender fire and other insurance on the Property satisfactory to and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon indebtedness secured hereby and in such order as Lender may determine, or at option of Lender, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender or Trustee may appear, and in any suit brought by Lender to foreclose this Deed of Trust. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

d.    To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this trust.

e.    That should Trustor fail to make any payment or do any act as herein provided, then Lender or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)    Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Lender or Trustee being authorized to enter upon the Property for such purposes.

(2)    Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Lender or Trustee.

● MERS HELOC - CA Deed of Trust
1D998-CA (02/04)                           Page 3 of 10                          Initials: DJS

4

DOC ID #: 00013802003405006

(3)  Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)  In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.  To pay immediately and without demand all sums so expended by Lender or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Lender, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.  To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Lender but not to exceed the maximum allowed by law at the time the statement is demanded.

3.    IT IS FURTHER AGREED THAT:

a.  Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.  By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Lender shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Lender may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.  Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this Deed of Trust on the remainder of the Property for the full amount of any indebtedness unpaid, Lender and Trustee are respectively empowered as follows:

(1)  Lender may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including Deeds of Trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)  Trustee may, at any time, and from time to time, upon the written request of Lender (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                    Page 4 of 10                    Initials: D J S

7

DOC ID #: 00013802003405006

d.    Upon (a) written request of Lender or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Lender the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Lender; provided, however, that Lender hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Lender for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Lender's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Lender may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Lender.

06 1213713

DOC ID #: 0001380200340500

g.    Waiver of a right granted to Lender hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Lender may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Lender of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Lender or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Lender, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Lender; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Lender shall elect to bring suit to foreclose this Deed of Trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Lender shall be entitled to reasonable attorney's fees and litigation costs.

i.    Lender, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Lender and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Lender hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new trustee.

j.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Lender herein. In this Deed of Trust, whenever the context so requires, the singular number includes the plural.

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                                    Page 6 of 10                                    Initials: DJS

06  1213713

*9*

DOC ID #: 0001380200340506

k.    Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Lender or Trustee shall be a party unless brought by Trustee.

l.    If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Lender, at its address designated on the first page of this Deed of Trust; (b) if this Deed of Trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Lender under the Agreement, whether before or after the Property is transferred, shall be secured under this Deed of Trust as if no transfer had occurred except for credit extended by Lender more than five days after it has received the written notices required by this paragraph.

m.    The pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust is hereby waived to the full extent permitted by law.

4.    WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:

a.    As used in this Paragraph 4:

(1)    "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

(2)    "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Lender to be interpreted in its most comprehensive and cumulative sense.

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                           Page 7 of 10                           Initials: DJS

*10*

DOC ID #: 0001380 2003405006

b.    Trustor represents and warrants that except as disclosed to and acknowledged in writing by Lender before the date of this Deed of Trust:

(1)    No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)    Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)    Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.    Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.    Trustor agrees to permit, or cause any tenant of Trustor to permit, Lender to enter and inspect the Property at any reasonable time for purposes of determining, as Lender deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Lender may obtain affirmative injunctive relief therefor.

e.    Trustor agrees to indemnify and hold Lender and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Lender and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this Deed of Trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in this Deed of Trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this Deed of Trust has been paid and discharged, whether or not this Deed of Trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Lender or of a third party after Trustor's interest in the Property has terminated.

06  1213713

DOC. ID #: 00013802003405006

f.    The provisions of this Paragraph 4 shall not be affected by the acquisition by Lender or its successors or assigns of any ownership or other interest in the Property beyond Lender's security interest in the Property created under this Deed of Trust, whether or not such acquisition is pursuant to the foreclosure of this Deed of Trust or a merger of the interest of the Lender or its successors and assigns in the Property.

5.    ADDITIONAL PROVISIONS:

a.    The execution of this Deed of Trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this Deed of Trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to the interest granted hereunder.

b.    The execution of this Deed of Trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Lender for any obligation described in Section 1., above. Any personal liability of such person to Lender shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this Deed of Trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to the interest granted hereunder.

12

DOC ID #: 00013802003405006

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth below.

**By signing below, Trustor agrees to all the terms and conditions of this Deed of Trust.**

Mailing Address For Notices

DAVID DE JESUS SARAVIA

817 EAST 115TH STREET
LOS ANGELES, CA 90005

RUTH ICELA SARAVIA

_____

_____

State of California
County of Los Angeles
On _May 31, 2006_____ , before me  Alejandro Chavez, Notary Public
, personally appeared

David De Jesus Saravia,
Ruth Icela Saravia                    , personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.
   WITNESS my hand and official seal.

[Notary Seal]
ALEJANDRO CHAVEZ
Commission # 1532109
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2008

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                         Page 10 of 10

06/02/06

06 1213713

**This page is part of your document - DO NOT DISCARD**

## 20121451133





Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/26/12 AT 02:38PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201209260150023

**00006454305**



004287484

**SEQ:
01**

ERDS - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E460070

E13

Recording Requested By:
Bank of America
Prepared By: Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#    11213802003432394

Property Address:
817 E 115th St
Los Angeles, CA 90059-2303
CA0-ADT 19239109 E 9/17/2012

This space for Recorder's use

MIN #: 1001337-0001349850-9    MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS SUCCESSOR TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST,    SERIES 2006-F whose address is C/O BAC; M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | COUNTRYWIDE BANK, N.A. |
| Original Borrower(s): | DAVID DE JESUS SARAVIA, AND RUTH ICELA SARAVIA, HUSBAND AND WIFE AS JOINT TENANTS |
| Original Trustee: | RECONTRUST COMPANY, N.A. |
| Date of Deed of Trust: | 5/27/2006 |
| Original Loan Amount: | $85,000.00 |

Recorded in Los Angeles County, CA on: 6/2/2006, book N/A, page N/A and instrument number 06 1213713

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

~~SEP 17 2012~~

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
   Janet Gordon
   Assistant Secretary

Exhibit "3"



In Re: David Saravia

Case Number: 15-25514

**DECLARATION OF APPRAISER**

I, Ross Demerjian declare as follows:

1. I have personal knowledge of the facts set forth below and if called upon to testify, I would and could competently testify thereto also I will be paid for my services.

2. On July 29, 2015, I was retained by David Saravia to appraise the residence located at: 817 E. 115th Street Los Angeles CA 90059.

2. I am familiar with the Uniform Standards of Professional Appraisal Practice and promulgated by the Appraisal Standards Board of the Appraisal Foundation and I appraised the Saravia conformity with these standards.

3. I personally inspected the exterior and interior of the subject property and based upon my comparison of the subject property, I concluded that the subject property's estimated value was $260,000 as of July 29, 2015.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America.

Executed this _8th_ day of October 2015, in Los Angeles County California.

Ross Demerjian, Declarant



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

817 E 115th St
Tract 9083, Lot 23,  Map Book 177, Pgs 26-28 (See Preliminary Title Report)
Los Angeles, CA 90059

## FOR:

David Saravia
817 E 115th Street
Los Angeles, CA  90059

## AS OF:

07/29/2015

## BY:

Ross Demerjian
1812 Paseo Del Mar
Palos Verdes Estates, CA 90274

# SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| Subject Address | 817 E 115th St | |
| Legal Description | Tract 9083, Lot 23, Map Book 177, Pgs 26-28 (See Preliminary Title Report) | |
| City | Los Angeles | |
| County | Los Angeles | |
| State | CA | |
| Zip Code | 90059 | |
| Census Tract | 2410.01 | |
| Map Reference | 704-E7 | |

| SALES PRICE | | |
|---|---|---|
| Sale Price | $ N/A | |
| Date of Sale | | |

| CLIENT | | |
|---|---|---|
| Borrower/Client | Saravia, David J | |
| Lender | David Saravia | |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| Size (Square Feet) | 1,351 | |
| Price per Square Foot | $ | |
| Location | Residential | |
| Age | 68 | |
| Condition | Average | |
| Total Rooms | 5 | |
| Bedrooms | 3 | |
| Baths | 2 | |

| APPRAISER | | |
|---|---|---|
| Appraiser | Ross Demerjian | |
| Date of Appraised Value | 07/29/2015 | |

| VALUE | | |
|---|---|---|
| Opinion of Value | $ 280,000 | |

## Uniform Residential Appraisal Report
File # 15111

The purpose of this appraisal is to provide an opinion of market value of the subject property as defined in this report, on behalf of Ross Demerjian Appraisals of Southern California facilitating the assignment for the aforementioned client on page one of this form report, who is identified as the intended user of the report.

The only function of the appraisal is to assist the aforementioned client in determining the subject property's value as of the date of inspection. The use by anyone other than the stated intended user, or for any other use than the stated intended use, in prohibited.

The appraiser will not be responsible for matters of legal nature that affect the property being appraised or the title to it. The title report was not made available for review and the appraiser has not checked the land records for recorded easements and have reported only apparent readily observable easements, encroachments and other apparent adverse conditions, if any.

This appraisal is not a home inspection and the appraiser is not acting as a home inspector when preparing the report. The borrower has the right to have the home inspected by a professional home inspector. Even if the borrower "may" rely on the appraisal report, they should not rely on it to disclose conditions and defects, that is the job of a home inspector.

When performing the inspection of this property, the appraiser visually observed areas that were readily accessible. The appraiser is not required to disturb or move anything that obstructs access or visibility. The appraiser's routine inspection and inquiries about the subject property did not develop any information that indicated any apparent conditions which would effect the property negatively.

When completing the appraisal, a visual inspection was done in accordance with Fannie Mae guidelines. The appraisal inspection is not technically exhaustive. Additionally, the appraisal inspection does not offer warranties or guarantees of any kind.

Unless otherwise noted there were no apparent or readily observable infestation, dampness or settlement. The appraiser is not an expert in the identification of these conditions, an inspection by a professional in these fields may reveal their existence.

**Note:** A representative number of electrical outlets & fixtures along with a representative number of typical heating & plumbing fixtures were tested with no inadequacies noted at the time of inspection. Heating, cooling, plumbing and electrical systems all appeared to be functioning properly at the time of inspection.

**USPAP Compliance:**
In compliance with the Ethics Rule of USPAP, I hereby certify that this appraiser has not performed any services regarding the subject property within the 3 year time period immediately preceeding acceptance of this assignment, as an appraiser or in any other capacity.

**Condition of Property:**
At the time of inspection, the kitchen was functional, meaning the kitchen cabinets were installed, stove and sink were working. In addition, the property was habitable and all mechanical equipment including plumbing, gas and electrical systems were functional and in working condition.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   See Below.  The cost approach presented in this appraisal is not intended for fire insurance purposes. Although useful as a secondary supportive data source, Marshall & Swift Cost hand book uses data calculated from large tract home construction projects that benefit from economies of scale & also does not take into account of specific site clean-up costs. Therefore, these figures cannot be relied upon for any insurance purposes of a single residence. Try www.bluebook.net

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 570,000 |
|---|---|---|---|---|
| Source of cost data  Marshall & Swift, buildingcost.net | DWELLING | 1,351 Sq.Ft. @ $ 175.00 | =$ | 236,425 |
| Quality rating from cost service  Avg.      Effective date of cost data  07/01/2015 | Oef Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | =$ | |
| Land to value ratio is typical due to convenience to modern | Garage/Carport | 400 Sq.Ft. @ $ 50.00 | =$ | 20,000 |
| conveniences. | Total Estimate of Cost-New | | =$ | 256,425 |
| Cost figures were derived from Marshall and Swift residential cost | Less      Physical      Functional      External | | | |
| handbook. Depreciation was derived by the age to life method. | Depreciation   153,855 | | =$( | 153,855) |
| Land value was derived by the extraction method due to lack of vacant | Depreciated Cost of Improvements | | =$ | 102,570 |
| land sales. No external, physical or functional obsolescence was noted. | "As-Is" Value of Site Improvements | | =$ | 15,000 |
| Remaining economic life estimated at 40 years. | | | | |
| Estimated Remaining Economic Life (HUD and VA only)          30 Years | INDICATED VALUE BY COST APPROACH | | =$ | 687,570 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM) | | | |

### PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached | | |
|---|---|---|
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. | | |
| Legal Name of Project | | |
| Total number of phases      Total number of units | Total number of units sold | |
| Total number of units rented      Total number of units for sale | Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes | ☐ No  If Yes, date of conversion. | |
| Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source | | |
| Are the units, common elements, and recreation facilities complete?  ☐ Yes | ☐ No  If No, describe the status of completion. | |

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes   ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 15111

| | | There are | 5 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 190,000 | to $ | 358,900 |
|---|---|---|---|---|---|---|---|
| | | There are | 24 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 185,000 | to $ | 330,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 817 E 115th St | 735 E 121st St | 11312 Belhaven St | 937 E Imperial Hwy |
| | Los Angeles, CA 90059 | Los Angeles, CA 90059 | Los Angeles, CA 90059 | Los Angeles, CA 90059 |
| Proximity to Subject | | 0.51 miles S | 0.30 miles E | 0.18 miles E |
| Sale Price | $ N/A | $ 290,000 | $ 250,000 | $ 288,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 220.36 sq.ft. | $ 179.99 sq.ft. | $ 189.22 sq.ft. |
| Data Source(s) | | MatrixMLS,DW14039379;DOM 259 | MatrixMLS,IV15059324;DOM 90 | MatrixMLS,AR14192838;DOM 274 |
| Verification Source(s) | | First American Title, Realist Tax | First American Title, Realist Tax | First American Title, Realist Tax |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | | VA Loan | | FHA | | FHA | |
| Concessions | | None Noted | 0 | None Noted | 0 | $2000 | 0 |
| Date of Sale/Time | | 08/09/2015 | 0 | 06/16/2015 | 0 | 07/16/2015 | 0 |
| Location | Residential | Residential | | Residential | | Busy Street | +10,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5,990 sf | 5,834 sf | 0 | 3,796 sf | +4,400 | 5,768 sf | 0 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Traditional | Traditional | | Traditional | | Traditional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 68 | 70 | 0 | 16 | 0 | 70 | 0 |
| Condition | Average | Superior | -10,000 | Superior | -10,000 | Superior | -10,000 |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 5 | 3 | 2 | 5 | 3 | 2 | 0 | 5 | 3 | 2 | 0 | 5 | 3 | 2 | 0 |
| Gross Living Area | 1,351 sq.ft. | 1,316 sq.ft. | 0 | 1,389 sq.ft. | 0 | 1,522 sq.ft. | -6,800 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Wall/None | Wall/None | | FAU/CAC | -3,000 | Wall/Wall | 0 |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | Garage-2 | Garage-2 | | Garage-2 | | Garage-1 | +3,000 |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Bonus Room | None | None | | None | | None | |
| Fireplace | No Fireplace | No Fireplace | | No Fireplace | | No Fireplace | |
| Upgrades | Qual. Upgrades | Sup Upgrades | -10,000 | Sup Upgrades | -10,000 | Sup Upgrades | -10,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 20,000 | ☐ + ☒ - $ | 18,600 | ☐ + ☒ - $ | 13,800 |
| Adjusted Sale Price | | Net Adj. 6.9% | | Net Adj. 7.4% | | Net Adj. 4.8% | |
| of Comparables | | Gross Adj. 6.9% $ | 270,000 | Gross Adj. 11.0% $ | 231,400 | Gross Adj. 13.8% $ | 274,200 |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    Public Tax Records, MLSMatrix, First American Title Company-Realist.
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    Public Tax Records, MLSMatrix, First American Title Company-Realist.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | 02/21/2014 |
| Price of Prior Sale/Transfer | | | | $181,000 |
| Data Source(s) | Realist, NDC, MLSMatrix | Realist, NDC, MLSMatrix | Realist, NDC, MLSMatrix | Realist, NDC, MLSMatrix |
| Effective Date of Data Source(s) | 07/29/2014 | 07/29/2014 | 07/29/2014 | 07/29/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Per Realist data, MLSMatrix and public records, the subject last sold on 06/02/2006 for $425,000 on Doc.# 1213711, Grant Deed. The prior transfer was out of a trust to an individual person for $0 on 04/08/2004, Quit Claim Deed per 1st American Title/Realist Tax data. Analysis of comparable sales: Sale #1, no sale in the last 12 months; Sale #2, no sale in the last 12 months; Sale #3, last transferred back to the lender, Trustee's Deed. All comparable sales offered appear to be typical arms-length sales transactions between buyer and seller unless otherwise noted.

Summary of Sales Comparison Approach    Condition & upgrade adjustments were made based on exterior inspection and available MLS data review. Adjustments for gross living area made at $40.00 sf for differences greater than 100 sf; lot adjustments made at $5.00 sf for differences greater than 1,000 sf, bedroom & bath adjustments were included in GLA adjustments, fireplaces adjusted at $2,000, forced-air heat was given $2,000, central A/C was given $3,000, carports were adjusted at $1,000 each, garage spaces given $3,000 each. A good correlation of value was established with an indicated range of value from $231,400 to $280,000. The subject's current value of $260,000 is near the upper end of the indicated range of value and appears to be a well supported based on extensive research and analysis of the most relevant and recent comparable sales data.  Note: See Supplemental Addendum at beginning of report for Subject and Comparable property comments, Condition Ratings comments, Doc #'s, MLS #'s, Subject market exposure time, Search parameter comments, enclosed patio comments, etc.

Indicated Value by Sales Comparison Approach $    260,000

Indicated Value by: Sales Comparison Approach $ 260,000    Cost Approach (if developed) $ 687,570    Income Approach (if developed) $
Direct sales comparison was given the greatest consideration as it best reflects typical reactions between buyer and seller, cost approach is merely supportive, income approach was not used due to the area being predominately owner occupied single family homes with a lack of rental data of single family homes in this area.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 260,000 , as of 07/29/2015 , which is the date of inspection and the effective date of this appraisal.

Ross Danielian Appraisals (310) 569-4206
Main File No. 15111 | Page # 9 of 31

# Uniform Residential Appraisal Report
File # 15111

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | |
|---|---|---|---|---|
| Property Address 817 E 115th St | | City Los Angeles | State CA | Zip Code 90059 |
| Borrower Saravia, David J | Owner of Public Record Saravia, David J | | County Los Angeles | |

Legal Description Tract 9083, Lot 23, Map Book 177, Pgs 26-28 (See Preliminary Title Report)

| | | |
|---|---|---|
| Assessor's Parcel # 6072-011-022 | Tax Year 2014 | R.E. Taxes $ 3,287.00 |
| Neighborhood Name South Los Angeles | Map Reference 704-E7 | Census Tract 2410.01 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☐ PUD    HOA $ 0    ☐ per year    ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) To determine value as of 07/29/2015.

Lender/Client David Saravia    Address 817 E 115th Street, Los Angeles, CA 90059

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Per MLSMatrix, as of 07/29/2015, the subject has not been listed for sale within the past 12 months.

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 70 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | Low 185 | | 2-4 Unit | 10 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | High 359 | 115 | Multi-Family | 10 % |
| | | | | Pred. 270 | 62 | Commercial | 10 % |
| | | | | | | Other | % |

Neighborhood Boundaries Area is bordered north by 105th Street, south by 124th Street, east by Compton Avenue and west by Main Street in the city of Los Angeles.

Neighborhood Description Neighborhood consists of one and two story single family residences reflecting a variety of age, size and styles. Area conforms in style, condition and quality of construction. Schools, parks, recreation area, freeway access and consumer conveniences are in close proximity to the subject's market area.

Market Conditions (including support for the above conclusions) Analysis showed that market values have remained stable with FHA, VA and conventional financing being typical for the immediate area. It is common in this area for seller to pay up to 3% buyer's closing costs. Marketing time is now estimated at under 4 months for conforming properties with reasonable listing prices.

| | | | |
|---|---|---|---|
| Dimensions 49 x 120 | Area 5,990 sf | Shape Rectangular | View Residential |

Specific Zoning Classification Lar1    Zoning Description Single-Family Residential

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ Typical of area | Water | ☒ | ☐ Typical of area | Street Macadam | ☒ | ☐ |
| Gas | ☒ | ☐ Typical of area | Sanitary Sewer | ☒ | ☐ Typical of area | Alley Macadam | ☒ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 06037C1795F    FEMA Map Date 9/26/2008

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
No apparent or disclosed adverse easements, encroachments, slide areas, special assessments, or illegal nonconforming zoning were noted at the time of inspection. Further Site comments: Subject's site/lot is a flat pad. Subject lot is square in size for immediate area. Typical site utility easements exist. The title report was not available for review at the time of inspection.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls | Concrete/Average | Floors | Tile,Wood/Avg |
| # of Stories 1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Stucco/Average | Walls | Plaster/Average |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 0sf sq.ft. | | Roof Surface | Comp.Shingle/Avg | Trim/Finish | Paint,Wood/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish % | | Gutters & Downspouts | Metal Gutters/Avg | Bath Floor | Tile/Average+ |
| Design (Style) Traditional | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Aluminum/Avg | Bath Wainscot | Tile/Average+ |
| Year Built 1947 | | Evidence of ☐ Infestation None | | Storm Sash/Insulated | None/Typical | Car Storage ☐ None | |
| Effective Age (Yrs) 45 | | ☐ Dampness ☐ Settlement | | Screens | Aluminum/Avg | ☒ Driveway # of Cars 2 | |
| Attic ☐ None | | Heating ☐ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ Woodstove(s) # 0 | Driveway Surface | Concrete |
| ☐ Drop Stair ☐ Stairs | | ☒ Other Wall Fuel Gas | | Fireplace(s) # 0 | ☒ Fence Wd,Chn | ☒ Garage # of Cars 2 | |
| ☐ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | | ☒ Patio/Deck Conc | ☒ Porch Cov.Conc | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | Pool None | Other None | ☒ Att. ☒ Det. ☐ Built-In | |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☒ Disposal ☐ Microwave ☐ Washer/Dryer ☒ Other (describe) Ceiling Vent

Finished area above grade contains: 5 Rooms 3 Bedrooms 2 Bath(s) 1,351 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Subject is an older, Traditional style with 3 bedrooms, 1.5 bathrooms, stucco siding, comp shingle roof, aluminum windows, upgraded kitchen with formica counters, newer cabinets, typical appliances, wood & tile flooring, wall heating.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). Subject shows average condition & marketability per inspection. Public record states that the subject was built in 1947 with 3 bedrooms, 1 1/2 baths within 1,351 sf GLA. Inspection confirmed this data. No functional, external or physical problems noted at the time of inspection.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe
None apparent or disclosed to appraiser. The appraiser has not been provided with any documentation revealing the existence of any physical deficiencies nor apparent adverse conditions. Note: The borrower may not rely on this report for structural conditions that may exist. Borrower is encouraged to obtain a home inspection by a professional home inspector to determine if any problems exist. See limiting condition #5.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Main File No. 15111  Page # 12 of 31

Uniform Residential Appraisal Report  File# 15111

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Uniform Residential Appraisal Report**    File # 15111

**APPRAISER'S CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Uniform Residential Appraisal Report    File # 15111

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    Ross Demerjian, CREA | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name    Ross Demerjian | Name |
| Company Name    Ross Demerjian Appraisals | Company Name |
| Company Address    1812 Paseo Del Mar, Palos Verdes Estates, | Company Address |
| CA 90274 | |
| Telephone Number    (310) 569-4206 | Telephone Number |
| Email Address    ross.d@cox.net | Email Address |
| Date of Signature and Report    08/03/2015 | Date of Signature |
| Effective Date of Appraisal    07/29/2015 | State Certification # |
| State Certification #    AR041503 | or State License # |
| or State License # | State |
| or Other (describe)    State # | Expiration Date of Certification or License |
| State    CA | |
| Expiration Date of Certification or License    01/26/2016 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 817 E 115th St | Date of Inspection |
| Los Angeles, CA 90059 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $    260,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | |
| Company Name    David Saravia | COMPARABLE SALES |
| Company Address    817 E 115th Street, Los Angeles, CA 90059 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report
File # 15111

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 817 E 115th St Los Angeles, CA 90059 | 1105 E 114th St Los Angeles, CA 90059 | | 943 E 107th St Los Angeles, CA 90002 | | | |
| Proximity to Subject | | 0.23 miles E | | 0.66 miles N | | | |
| Sale Price | $           N/A | $           250,000 | | $           295,000 | | $ | |
| Sale Price/Gross Liv. Area | $        sq.ft. | $     160.46 sq.ft. | | $     215.64 sq.ft. | | $        sq.ft. | |
| Data Source(s) | | MatrixMLS,DW15004128;DOM 5 | | MatrixMLS,EV14209955;DOM 128 | | | |
| Verification Source(s) | | First American Title, Realist Tax | | First American Title, Realist Tax | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | FHA $4000 | 0 | Pending Sale Stated Amount | 0 0 | | |
| Date of Sale/Time | | 03/18/2015 | 0 | Listed 09/28/14 | 0 | | |
| Location | Residential | Residential | | Residential | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 5,990 sf | 3,255 sf | +5,500 | 5,197 sf | 0 | | |
| View | Residential | Residential | | Residential | | | |
| Design (Style) | Traditional | Traditional | | Traditional | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 68 | 115 | | 90 | | | |
| Condition | Average | Superior | -10,000 | Superior | -10,000 | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | 0 | Total Bdrms. Baths | 0 | Total Bdrms. Baths | |
| Room Count | 5    3    2 | 6    4    2 | | 5    3    2 | | | |
| Gross Living Area | 1,351 sq.ft. | 1,558 sq.ft. | -8,300 | 1,368 sq.ft. | 0 | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | 0sf | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | Wall/None | Wall/None | | Wall/None | | | |
| Energy Efficient Items | None | None | | None | | | |
| Garage/Carport | Garage-2 | No Garage | +6,000 | Carport-1 | +5,000 | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | | |
| Bonus Room | None | None | | None | | | |
| Fireplace | No Fireplace | No Fireplace | | No Fireplace | | | |
| Upgrades | Qual. Upgrades | Sup Upgrades | -10,000 | Sup Upgrades | -10,000 | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $      16,800 | ☐ + ☒ - | $      15,000 | ☐ + ☐ - | $ |
| Adjusted Sale Price of Comparables | | Net Adj.    6.7  % Gross Adj.  15.9 % | $     233,200 | Net Adj.    5.1  % Gross Adj.   8.5 % | $     280,000 | Net Adj.        % Gross Adj.      % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 09/23/2014 | | |
| Price of Prior Sale/Transfer | | $272,777 | | |
| Data Source(s) | Realist, NDC, MLSMatrix | Realist, NDC, MLSMatrix | Realist, NDC, MLSMatrix | |
| Effective Date of Data Source(s) | 07/29/2014 | 07/29/2014 | 07/29/2014 | |

Analysis of prior sale or transfer history of the subject property and comparable sales    Per Realist data, MLSMatrix and public records, the subject last sold on 06/02/2006 for $425,000 on Doc.# 1213711, Grant Deed. The prior transfer was out of a trust to an individual person for $0 on 04/08/2004, Quit Claim Deed per 1st American Title/Realist Tax data.  Analysis of comparable sales: Sale #4, last transferred back to the lender; Property #5, no sale in the last 12 months.  All comparable sales offered appear to be typical arms-length sales transactions between buyer and seller unless otherwise noted.

Analysis/Comments    The subject is located in the "Metropolitan South" area of the city of Los Angeles in a neighborhood comprised of mostly older homes ranging in age from 2 - 115 years. The subject's market area is comprised mostly of Traditonal, Bungalow, Ranch & Spanish style homes built from the 1900's to 2010's. The trend is to remodel or completely raize structures and rebuild with new construction, usually as property transfers occur. The predominant age of comparable homes within the subject's market area is 82 years. The subject's location has good access to local freeways, area schools, major employment centers of central and downtown Los Angeles, city parks, commuter bus lines, shopping and roofing, aluminum windows. The home has wall heat, a detached 2-car garage serviced by a concrete driveway that runs along the west side of the home. The subject's lot is surrounded by wood and chain fencing. The upgraded kitchen has formica counters over newer wood cabinets along with newer average quality appliances. The upgraded full bathroom has tile wall and flooring surfaces with typical fixtures all in average condition per inspection. Subject's flooring consists of wood and tile throughout, all in average condition. Interior and exterior paint are both in average overall condition per inspection.  All interior amenities appear to be well maintained per inspection. The subject is situated on an interior street with minimal and local traffic only. The home's landscaping appeared to be slightly overgrown and minimally maintained at the time of inspection.

Note: Appraiser's inspection showed that the subject is in average overall condition when compared to homes within the immediate neighborhood. Most real estate professionals would market the home as a cosmetic fixer in need of general cleanup, new landscaping, fresh paint and modern upgrades to the property. The subject's effective age is approximately 45 years with a remaining economic life of 30 years.

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

# Market Conditions Addendum to the Appraisal Report

| | Main File No. 15111 | Page # 16 of 31 |
|---|---|---|
| | File No. 15111 | |

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 817 E 115th St | City Los Angeles | State CA | ZIP Code 90059 |
|---|---|---|---|---|
| Borrower | Saravia, David J | | | |

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 11 | 3 | 10 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 1.83 | 1.00 | 3.33 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | *N/A | *N/A | 5 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | *N/A | *N/A | 1.5 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 267,200 | 265,000 | 276,300 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 62 | 41 | 113 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | *N/A | *N/A | 306,800 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | *N/A | *N/A | 79 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | .00 | .00 | 0.92 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Seller concession trends in the subject's immediate market area have remained stable for the past 12 month period. The use of buy-downs, incentives, or other types of options are not common under the current market conditions and if present would require cash equivalency adjustments. Seller paid closing cost are not common, although they sometimes occur and amount to less than 3% of purchase price. All cash sales in the subject's market area are rare and virtually all sales are transferred via available financing. Conventional financing with 20% down or more is typical in the subject's market area. Private money, FHA & VA financing are limited at the present time.

Are foreclosure sales (REO sales) a factor in the market?    ☐ Yes    ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).
Although the greater L.A. area market has been affected, the increasing competition among REO properties in the subject's immediate market area has been marginally impacted. Currently, the number of foreclosed properties being placed back onto the market that are selling at a measurable discount has stabilized. Current market data reflects closed sale prices that have stabilized somewhat or ceased to decline at rates that were seen in 2008 - 2009. A few short sales and REO listings is diminished over time, the influence of distressed properties is having reduced affects on most markets in the Los Angeles basin.
Cite data sources for above information.    Sources utilized to obtain data to perform the above research and analysis include the MLS Matrix, Realist data & other public record vendors, the Multi-Regional MLS, the South Bay MLS as well as interviews with real estate professionals & relevant market participants.
Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
Active Listings only were included in the above analysis. Note: The shaded areas are not filled in, as it is not possible to extract accurate and measurable data since historical listing activity is not available in the local/regional MLS. The past listing data cannot be obtained in the time-framed segments that are requested by the 1004MC form. The listing information is supplied as of the date of inspection. Days on market numbers given in averages, not medians, per MLS data limitations. The market has stabilized throughout the Greater Los Angeles area with no significant oversupply and a lower rate of decline of prices in most areas. The number of listings and the average marketing time have fluctuated slightly within the past 12 month period making accurate conclusions as to market stability with regards to "comparable sales price" and "days on market" unreliable. Subject's specific market values show a stable value trend with an increasing number of closed sales over the past 3 month period per market analysis. Marketing time averages have fluctuated but have remained mostly stable over the last 12 month period. Absorption rate has increased in the most recent 3 month time segment. Marketing time is averaging under 4 months. Sales-to-list price ratios are currently below 100%.

**If the subject is a unit in a condominium or cooperative project, complete the following:**

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Project Name: | Overall Trend | | |
|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?    ☐ Yes    ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Ross Demerjian | Supervisory Appraiser Name | |
| Company Name | Ross Demerjian Appraisals | Company Name | |
| Company Address | 1812 Paseo Del Mar, Palos Verdes Estates, CA 90274 | Company Address | |
| State License/Certification # | AR041503 | State CA | State License/Certification # | State |
| Email Address | ross.d@cox.net | Email Address | |

| Freddie Mac Form 71    March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC    March 2009 |
|---|---|---|

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | File No. 15111 | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County Los Angeles | | State CA | Zip Code 90059 |

**Comments on FNMA form 1004MC / Neighborhood and market conditions Analysis:**

The local area market has experienced a substantial increase in property values annually since 1998. It appears that the trend, in general, began to stabilize in the middle of 2006, depending on the specific neighborhood. In recent years mortgage interest rates were at historic lows for an extended period of time and remain relatively low. Additionally, financing options were plentiful with numerous loan programs available for a wide range of borrowers. In the middle of 2006, the Los Angeles area began to see an increase in mortgage payment defaults and foreclosure activity. From 2007 through 2009 the Los Angeles area foreclosure rate in the general area dramatically increased. While interest rates on mortgage loans are still relatively low, it appears that availability of certain financing options has diminished thereby limiting the purchasing power of certain buyers in the marketplace. It is difficult to develop a precise analysis of the price trend in the subject's immediate neighborhood due to the diversity in property characteristics and the limited activity of similar competing properties.

The information reported in form 1004MC is to be used as the basis for the conclusion reported in the neighborhood section of the appraisal report. The 1004MC form instructions specify the analysis of properties that compete with the subject. Historically, the trends reported in the neighborhood section of the appraisal were based on a market broader than just the properties that compete with the subject. The reason is that limiting the analysis to such a narrow focus would typically not produce enough data to develop an accurate analysis of a trend. For example, the property may be in an area where there are only a total of 5 viable sales comparables within the past year. With this in mind, the inventory and trend analysis in form 1004MC may be based on criteria with parameters that are expanded beyond the criteria used by prospective buyers of the subject property, in order to include enough data to identify a trend. It is the same approach applied to researching the market for comparable sales. In many cases, there are limited recent sales of similar competing properties that fit within all of the FNMA guidelines, and it becomes necessary to expand the research to include the most relevant comparable data available.

Using the above approach, however, poses another challenge. In a market as diverse as the subject's market, there is such a broad range of prices that the data might not indicate an accurate price trend, in terms of average or median. The reason is that there may simply be more sales in one end of the range than the other during that particular time period. This is why media publications may report an increase in the median home price within a particular zip code in a time period where property values were actually declining in that same zip code, or "vice versa".

When analyzing and reporting the statistics on listing activity, it should be noted that a listing, by its very nature, is a current (active offering). The MLS utilized to produce the data for analysis in the form does not maintain records on past active listings. Instead, the status in the MLS changes and the "listings" become cancelled, withdrawn and sold etc... Therefore, the fields related to historical listings are deemed to be not applicable, as the information is not accessible.

I have indicated in the 1004MC form that developer/builder paid financial assistance is prevalent. What that means is that it is common in the subject's market area for developers and builders of tract homes or large condominium projects to offer credits to buyers for items such as non-recurring closing costs. It is common to see an amount in the area of 3% of the purchase price, particularly with conforming loan amounts. There have been situations in the past where such sellers would increase sales prices to accommodate larger concessions or negotiate credits instead of price in some areas and some cases, but those credits are difficult to uncover and that practice is not currently prevalent in the subject's market.

The data analyzed and reported in form 1004MC indicates that the subject is in a market that has remained relatively stable. There is currently available financing for qualified buyers, and there is a moderate to strong demand for properties in the subject's market. The declines that took place from 2007-2010 have increased affordability and have attracted new buyers. The marketability of the subject is average+ good, and at a reasonable price would, most likely, sell within the timeframe indicated on page one of the appraisal report.

| | | | | |
|---|---|---|---|---|
| Signature | | | Signature | |
| Name Ross Demerjian | | | Name | |
| Date Signed 09/03/2015 | | | Date Signed | |
| State Certification # AR041503 | | State CA | State Certification # | State |
| Or State License # | | State | Or State License # | State |

| Borrower/Client | | | | File No. 15111 |
| Property Address | 817 E 115th St | | | |
| City | Los Angeles | County Los Angeles | State CA | Zip Code 90059 |
| Lender | David Saravia | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

[X] Appraisal Report    (A written report prepared under Standards Rule    2-2(a)  , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

[ ] Restricted    (A written report prepared under Standards Rule    2-2(b)  , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report    restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Comments on Appraisal and Report Identification

Note any USPAP related issues requiring disclosure and any State mandated requirements:

This is a complete appraisal report. This appraisal report is intended to comply with the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) guidelines, also in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP) and the Office of the Comptroller of the Currency's (OCC) minimal appraisal standards. The purpose of this appraisal is to provide an opinion of an estimated market value of the subject property, as of the specific date provided within the report. The property rights appraised are fee simple, assuming no indebtedness or encumbrances against the property and a clear and marketable title. The appraiser has no liability or responsibility to any other person(s) or party(s) except to the client named within the appraisal report.

The only function of the appraisal is to assist the aforementioned client in determining the subject property's value as of the date of inspection. This report should not be relied upon to disclose any adverse conditions present in the subject property. The appraisal report does not guarantee that the property is free of defects. It is recommended that the client gets a qualified professional home inspection and advice if there are any questions regarding defects, structural issues or building compliance issues, as this is outside the scope of this assignment.

This appraiser is not a licensed building inspector nor a professional home inspector and is not qualified to survey or analyze physical items that are not readily visible. The physical walk through observation performed on the subject property is limited to obvious and readily visible issues and/or deferred maintenance. If any party(s) have any questions or concerns regarding physical problems, structural issues, infection, contamination or any other issues regarding the property, a qualified expert in the appropriate field should be employed.

**APPRAISER:**

Signature: _____
Name: Ross Demerjian
State Certification #: AR041503
or State License #:
State: CA    Expiration Date of Certification or License: 01/26/2016
Date of Signature and Report: 08/03/2015
Effective Date of Appraisal: 07/29/2015
Inspection of Subject: [ ] None  [X] Interior and Exterior  [ ] Exterior-Only
Date of Inspection (if applicable): 07/29/2015

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature: _____
Name: _____
State Certification #:
or State License #:
State: ___  Expiration Date of Certification or License: _____
Date of Signature: _____
Inspection of Subject: [ ] None  [ ] Interior and Exterior  [ ] Exterior-Only
Date of Inspection (if applicable): _____

Form ID14 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Main File No. 15111 | Page # 19 of 31 |

| | |
|---|---|
| Borrower/Client | Saravia, David J |
| Property Address | 817 E 115th St |
| City | Los Angeles |
| Lender | David Saravia |

| County | Los Angeles | State | CA | Zip Code | 90059 |



Main File No. 1611    Page # 20 of 31

Aerial Map

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County | Los Angeles | State CA | Zip Code 90059 |



Main File No. 15111    Page # 21 of 31

| Borrower/Client | Saravia, David J | | | | |
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County | Los Angeles | State CA | Zip Code 90059 |



Main File No. 15111    Page # 22 of 31

**Building Sketch (Page - 1)**

| | | |
|---|---|---|
| Borrower/Client | Saravia, David J | |
| Property Address | 817 E 115th St | |
| City | Los Angeles | |
| Lender | David Saravia | County Los Angeles    State CA    Zip Code 90059 |



Sketch by Apex Median™

Comments:

Main File No. 15111    Page # 23 of 41

Subject Photo Page

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County Los Angeles | | State CA | Zip Code 90059 |



**Subject Front**

817 E 115th St

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,351 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



**Subject Rear**



**Street View**

Form PIC3x5.SR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Subject Interior Photo Page**

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | Saravia, David J | | | | |
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County Los Angeles | | State CA | Zip Code 90059 |



**Street View**

| | |
|---|---|
| 817 E 115th St | |
| Sales Price | N/A |
| Gross Living Area | 1,351 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



**Subject Rear & Side**



**Subject's Rear Yard**

Form PIC3x5.SI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Main File No. 15111 | Page # 25 of 31

| Borrower/Client | Saravia, David J |
|---|---|
| Property Address | 817 E 115th St |
| City | Los Angeles |
| Lender | David Saravia |

| County Los Angeles | State CA | Zip Code 90059 |
|---|---|---|



### Garage Front

817 E 115th St

| Sales Price | N/A |
|---|---|
| Gross Living Area | 1,361 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



### Garage Side



### Garage Interior

Form PIC3x5.SI : "TOTAL" appraisal software by a la mode, Inc. - 1-800-ALAMODE

| Main File No. 15111 | Page # 26 of 31 |
| --- | --- |

| Borrower/Client | Saravia, David J | | | | |
| --- | --- | --- | --- | --- | --- |
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County | Los Angeles | State CA | Zip Code 90059 |



**Laundry Area**

| | |
| --- | --- |
| | 817 E 115th St |
| Sales Price | N/A |
| Gross Living Area | 1,351 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



**Water Heater**



**1/2 Bathroom**

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County | Los Angeles | State CA | Zip Code 90059 |



### Subject Bedroom 1

817 E 115th St

| Sales Price | N/A |
|---|---|
| Gross Living Area | 1,351 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



### Subject Bedroom 2



### Subject Bedroom 3

**Subject Interior Photo Page**

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | Saravia, David J | | | | | Main File No. 15111  Page # 28 of 31 |
| Property Address | 817 E 115th St | | | | | |
| City | Los Angeles | | | | | |
| Lender | David Saravia | County | Los Angeles | State | CA | Zip Code  90059 |



### Full Bathroom

817 E 115th St

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,351 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



### Full Bathroom



### Subject Living Room

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County Los Angeles | | State CA | Zip Code 90059 |



**Subject Kitchen**

817 E 115th St

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,351 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,990 sf |
| Quality | Average |
| Age | 68 |



**Subject Kitchen**



**Dining Area**

Main File No. 15111   Page # 30 of 31

| Borrower/Client | Saravia, David J | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | | |
| City | Los Angeles | | | | | |
| Lender | David Saravia | County | Los Angeles | State | CA | Zip Code 90059 |



### Comparable 1
| | |
|---|---|
| 735 E 121st St | |
| Prox. to Subject | 0.51 miles S |
| Sale Price | 290,000 |
| Gross Living Area | 1,316 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,834 sf |
| Quality | Average |
| Age | 70 |



### Comparable 2
| | |
|---|---|
| 11312 Belhaven St | |
| Prox. to Subject | 0.30 miles E |
| Sale Price | 250,000 |
| Gross Living Area | 1,389 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 3,796 sf |
| Quality | Average |
| Age | 16 |



### Comparable 3
| | |
|---|---|
| 937 E Imperial Hwy | |
| Prox. to Subject | 0.18 miles E |
| Sale Price | 288,000 |
| Gross Living Area | 1,522 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Busy Street |
| View | Residential |
| Site | 5,768 sf |
| Quality | Average |
| Age | 70 |

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | | | | |
| Lender | David Saravia | County | Los Angeles | State CA | Zip Code 90059 |



### Comparable 4
1105 E 114th St

| | |
|---|---|
| Prox. to Subject | 0.23 miles E |
| Sale Price | 250,000 |
| Gross Living Area | 1,558 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 3,255 sf |
| Quality | Average |
| Age | 115 |



### Comparable 5
943 E 107th St

| | |
|---|---|
| Prox. to Subject | 0.66 miles N |
| Sale Price | 295,000 |
| Gross Living Area | 1,368 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | Residential |
| Site | 5,197 sf |
| Quality | Average |
| Age | 90 |

| | |
|---|---|
| Prox. to Subject | |
| Active Listing | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

| Main File No. 15111 | Page # 1 of 31 |

| Borrower/Client | Saravia, David J | | | | | File No. 15111 | |
| Property Address | 817 E 115th St | | | | | | |
| City | Los Angeles | | | | | | |
| Lender | David Saravia | County Los Angeles | | | State CA | Zip Code 90059 | |

Notice of Electronic Delivery

This report contains an electronically affixed, digitally signed appraiser's signature, therefore the following information applies:

This report is an original document. It has been printed from a digitally signed and secured appraisal report. This type of signature is considered a valid original and is not a copy. Subsequently it carries the same level of authenticity and responsibility as an ink signature on a paper copy report. This procedure was adopted unanimously on July 18, 1995 by the Appraisal Standards Board and is indicated as such in the latest edition of the Uniform Standards of Professional Appraisal Practice (USPAP) in the section "Statements on Appraisal Standards No. 8 (SMT-*)."

All electronic signatures on this report have a security feature maintained by individual passwords for each signed appraiser. No person can alter the appraisal with the exception of the original signing appraiser(s). However, due to its electronic delivery, the report may not be delivered in its totality. Additionally, the appraisal report or portions of the report may be scrambled during transmission, or 3rd party software may have changed one or more of the data included in the original report without the appraiser's authorization.

The appraiser is not responsible for any transmission errors and the appraiser cannot guarantee that a report delivered electronically is a true and accurate representation of the appraisal report. The appraiser is assuming, unless otherwise notified, that the appraisal report was only delivered to the intended user(s).

The digitally signed report is designed to be sent directly to the lender and read by computer. This helps to ensure a faster delivery of the appraisal report. To begin electronic delivery of appraisal reports, make sure your computer is equipped with "e-mail" service and has Adobe Acrobat Reader 4.0 installed (Acrobat Reader 4.0 can be obtained free at: www.adobe.com).

| Signature | | Signature | |
| Name Ross Demerjian | | Name | |
| Date Signed 09/03/2015 | | Date Signed | |
| State Certification # AR041502 | | State Certification # | |
| Or State License # | State CA | Or State License # | State |
| | | | State |

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 617 E 115th St | | | | |
| City | Los Angeles | County | Los Angeles | State CA | Zip Code 90059 |
| Lender | David Saravia | | | | |

No age adjustments were deemed necessary for the comparable properties utilized within this report. Any needed age adjustments have been combined into the condition adjustments in the sales grid where significant effective age differences were noted.

**Note On Subject's Land Value:**

Due to the subject's location within close proximity to coastal areas of Southern California, it is not unusual and is considered typical for the subject's land value to constitute more than 30% of the subject's overall market value.

**Comparable Property Adjustments and Comments:**

Research has shown that the subject's market area has a limited supply of relevant closed / active / pending sales data at the present time. With this in mind, the closed comparable sales as well as active listings and pending sales chosen were considered to be the best available comparable properties as indicators of the subject's current market value at the time of inspection. All market adjustments have been made per on-site inspections, appraiser's knowledge of the local market area, interviews with local real estate professionals, MLS data review, public tax records, First American Title / Realist data.

The appraiser has bracketed the subject property to the best of his ability with respect to age, style, gross living area, bedroom and bathroom count, lot size, location... all while using the very limited closed sales data that the subject's market area provided at the time of inspection. Using a wider market area to compile comparable data would only confuse the reader and would result in greater net/gross adjustment percentages that would then fall well outside historically preferred lender guidelines. Significant value differences are realized outside of the subject's market area which would make the use of comparable properties in these areas impractical. This could lead the reader to come to unreliable conclusions with regards to current market value.

**Note:** Data for market adjustments was gained based on Matched Paired Sales Analysis where it was possible. Market data was compared and analyzed in order to extract typical market reactions for differences in effective age, GLA, lot size, view amenity, bedroom and bathroom count, heating & cooling amenities, fireplace and garage space count, swimming pool and bonus room features. Where Matched Paired Sales Anaylsis was not possible to use for the extraction of typical market reactions for differences in properties, Percentage and/or Lump Sum adjustment methods have been used.

**Sale #1:** is a completely remodeled Traditional style home that showed superior overall condition and upgrades per inspection and MLS data review and it was adjusted accordingly.
**Listed 02/25/2015 for $199,000. Sold 06/09/2015 for $290,000.**
**No Concessions noted. VA Loan.**
**ML# DW14039379; Short Sale**
**Doc.# 679411**

**Sale #2:** is a newer, Traditional style home that showed superior overall condition and upgrades per inspection and MLS data review and it was adjusted accordingly. Sale #2 was adjusted for differences in lot size, heating & cooling amenities.
**Listed 03/20/2015 for $249,900. Sold 06/16/2015 for $250,000.**
**No Concessions noted. FHA Loan.**
**ML# IV15059324; Standard Sale**
**Doc.# 708642**

**Sale #3:** is a completely remodeled Traditional style home that showed superior overall condition and upgrades per inspection and MLS data review and it was adjusted accordingly. Sale #3 was adjusted for differences in condition and upgrading, gross living area and garage space count. Sale #3 was upwardly adjusted due to inferior location on a major area thoroughfare. The reason for the long time on the market for this sale is most likely due to its inferior busy street location.
**Listed 09/07/2014 for $314,900. Sold 07/16/2015 for $288,000.**
**$2,000 Concessions noted for undisclosed reasons. FHA Loan.**
**ML# AR14192838; Standard Sale**
**Doc.# 859968**

**Sale #4:** is a completely remodeled Traditional style home that showed superior overall condition and upgrades per inspection and MLS data review and it was adjusted accordingly. Sale #4 was adjusted for differences in condition and upgrading, lot size, gross living area, parking amenities.
**Listed 01/07/2015 for $250,000. Sold 03/18/2015 for $250,000.**
**$4,000 Concessions noted for buyer's closing costs. FHA Loan.**
**ML# DW15004128; HUD Sale**
**Doc.# 288766**

**Pending Sale #5:** is a pending sale that was offered at the stated amount per conversation with the listing office. Property #5, located on the same street as the subject, is a newly built, Spanish style home that showed superior overall condition and upgrades per inspection and MLS data review and it was adjusted accordingly. Sale #5 was reduced for differences in lot size, condition and upgrading (Property #5 is new construction), gross living area, parking amenities, fireplace count.
**Listed 09/28/2014 for $305,000. Pending on 06/05/2015 for the stated amount per MLS data and conversation with the listing office.**
**No Concessions noted.**
**ML# EV14209955, Standard Sale**
**DOM-128**

| | | | | |
|---|---|---|---|---|
| Signature | _(signature)_ | | Signature | |
| Name | Ross Demerjian | | Name | |
| Date Signed | 08/03/2015 | | Date Signed | |
| State Certification # | AR041503 | State CA | State Certification # | State |
| Or State License # | | State | Or State License # | State |

| Borrower/Client | Saravia, David J | | | | | File No. 15111 |
| Property Address | 817 E 115th St | | | | | |
| City | Los Angeles | | County Los Angeles | | | |
| Lender | David Saravia | | | State CA | Zip Code 90059 |

## Condition of Property:

**Note:** At the time of inspection, the kitchen was functional, meaning the kitchen cabinets were installed, stove and sink were working. In addition, the property was habitable and all mechanical equipment including plumbing, gas and electrical systems were functional and in working condition. Utilities were on at the time of inspection.

## USPAP Compliance:

**Note:** In compliance with the Ethics Rule of USPAP, I hereby certify that this appraiser has not performed any services regarding the subject property within the 3 year time period immediately preceeding acceptance of this assignment, as an appraiser or in any other capacity.

## Note on Subject's Marketing Exposure Time:

At the time of inspection, demand and supply appear to be in balance within the subject's market area. Based on analysis of all data gathered in researching comparable data for the subject property, it is the appraiser's opinion that the typical market exposure time for the subject property is now estimated at under 3 months assuming a reasonable and realistic listing price.

## Comparable Property Search Parameters:

Approximate market boundaries as mentioned in the "neighborhood section" on page 1 of the report are as follows: Area is bordered north by 105th Street, south by 124th Street, east by Compton Avenue and west by Main Street in the city of Los Angeles. Comparable property search was limited to SFR's of similar age, style, size, bedroom & bathroom count with GLA's from 1,300 sf GLA - 1,700 sf GLA *or within approximately 25% of the subject's GLA*. Search was limited to closed sales within 12 months of the date of inspection and approximately 0.75 mile radius of the subject. The appraiser bracketed the subject property to the best of his ability with respect to age, style, gross living area, bedroom and bathroom count, lot size and location ... all while using the limited closed sales data that the subject's market area provided at the time of inspection.

## Comments and Analysis of the Subject:

The subject is located in the "Metropolitan South" area of the city of Los Angeles in a neighborhood comprised of mostly older homes ranging in age from 2 - 115 years. The subject's market area is comprised mostly of Traditonal, Bungalow, Ranch & Spanish style homes built from the 1900's to 2010's. The trend is to remodel or completely raize structures and rebuild with new construction, usually as property transfers occur. The predominant age of comparable homes within the subject's market area is 62 years. The subject's location has good access to local freeways, area schools, major employment centers of central and downtown Los Angeles, city parks, commuter bus lines, shopping and all other consumer conveniences. The subject is a Traditional style home with 3 bedrooms, 1 1/2 bathrooms, stucco siding, composition shingle roofing, aluminum windows. The home has wall heat, a detached 2-car garage serviced by a concrete driveway that runs along the west side of the home. The subject's lot is surrounded by wood and chain fencing. The upgraded kitchen has formica counters over newer wood cabinets along with newer average quality appliances. The upgraded full bathroom has tile wall and flooring surfaces with typical fixtures all in average condition per inspection. Subject's flooring consists of wood and tile throughout, all in average condition. Interior and exterior paint are both in average overall condition per inspection. All interior amenities appear to be well maintained per inspection. The subject is situated on an interior street with minimal and local traffic only. The home's landscaping appeared to be slightly overgrown and minimally maintained at the time of inspection.

**Note:** Appraiser's inspection showed that the subject is in average overall condition when compared to homes within the immediate neighborhood. Most real estate professionals would market the home as a cosmetic fixer in need of general cleanup, new landscaping, fresh paint and modern upgrades to the property. The subject's effective age is approximately 45 years with a remaining economic life of 30 years.

## Note on Subject's Location:

The subject is located on a typical residential street. The appraiser utilized only those properties that have similar influences. The closed and pending sales used within the report were deemed to be the best available comparables sales data at the time of inspection. All external factors contained within the subject's market area affect the entire area equally for the most-part except if noted otherwise within the report. It is common throughout the subject's market area to have ambient city / traffic / airplane noise and it is rarely considered a deterrent to buying a home within this market area except for the most extreme cases.

## Note On Location of Comparable Properties Across Boulevards:

It should be noted that various local boulevards intersect the subject's overall market area. Historical market analysis as well as the appraiser's good personal knowledge of this specific market area revealed no significant or remarkable differences in property values for homes similar to the subject at the current time within the defined market boundaries.

## Note on Design & Style:

The subject's immediate market area does not recognize any differences in design and/or style of the properties utilized for comparable sales with regards to overall value. Many different styles of homes are realized within the subject's market, none of which are considered to be more valuable than another. Effective age, gross living area and location are the biggest factors affecting local property values.

## Note On Age Adjustments:

| Signature | | Signature | |
| Name Ross Demerjian | | Name | |
| Date Signed 08/03/2015 | | Date Signed | |
| State Certification # AR041503 | | State Certification # | |
| Or State License # | State CA | Or State License # | State |
| | State | | State |

**Supplemental Addendum**   File No. 15111

| Borrower/Client | Saravia, David J | | | | |
|---|---|---|---|---|---|
| Property Address | 817 E 115th St | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90059 |
| Lender | David Saravia | | | | |

**Reconciliation:**

My objective when picking comparable properties for this report was to use the most similar available comparable properties with respect to recent closing dates, proximity, style, age, condition & amenities (views, bedroom and bathroom count, guest units) where at all possible.

The appraiser has bracketed the subject property to the best of his ability with respect to age, style, gross living area, bedroom and bathroom count, lot size, location... all while using the extremely limited closed sales data that the subject's market area provided at the time of inspection. Using a wider market area to compile comparable data would only confuse the reader and would result in greater net/gross adjustment percentages that would then fall well outside historically preferred lender guidelines. Significant value differences are realized outside of the subject's market area which would make the use of comparable properties in these areas impractical. This could lead the reader to come to inconclusive and unreliable conclusions with regards to current market value.

The appraiser researched all available sources including NDCdata, MLS, and exterior on-site inspections. The data deemed most applicable and reliable was used. All adjustments are reasonable and warranted based on market data. The comparable sales provided are all located within the subject's immediate market area and are considered to be the best available indicators of market value due to locations, overall utility, gross living areas & recent sale closings at the time of inspection. A good correlation of value was established with an indicated range of value from $231,400 to $280,000. The subject's current value of $260,000 is near the upper end of the indicated range of value and appears to be a well supported based on extensive research and analysis of the most relevant and recent comparable sales data.

**Note:** Due to the fact that all of the comparable sales are in superior overall condition with superior upgrading, Properties #1 - #5 were given equal weight in determining the subject's current estimated value. I searched extensively for a recent comparable sale that was in similar condition with similar upgrading but was unable to find it therefore the sales and pending sale are considered to be the best available comparable properties at the time of inspection. Widening out the market search area would bring irrelevant data into consideration as the market changes somewhat outside the search area with regards to locational influences, values, schools etc.

Note: It is typical in the subject's market for the majority of recent sales transactions to be remodeled properties. This is an area of significant interest to investors and home flippers which is the reason that these types of homes comprise the majority of recent sales.

**Note on Subject's Estimated Value vs Predominant Market Value:**

The subject's current estimated value of $260,000 is inline with the current neighborhood predominant market value of $270,000.

| Signature | | Signature | |
|---|---|---|---|
| Name | Ross Demerjian | Name | |
| Date Signed | 08/03/2015 | Date Signed | |
| State Certification # | AR041503 | State CA | State Certification # | State |
| Or State License # | | State | Or State License # | State |





**General Star National Insurance Company**
P O Box 10360 (Attn: GSN)
Stamford, Connecticut 06904

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number: NJA313947                    Renewal of Number:

1. **NAMED INSURED:** Ross E. Demarjian
   **STREET ADDRESS:**

   1812 Paseo Del Mar
   Palos Verdes Estates, CA 90274

2. **POLICY PERIOD:** Inception Date: 03/02/2015          Expiration Date: 03/02/2016
   Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. **LIMITS OF LIABILITY:**
   Each Claim:  $1,000,000
   Aggregate:   $1,000,000
   Claim Expenses have a separate Limit of Liability:
   Each Claim:  $1,000,000
   Aggregate:   $1,000,000

4. **DEDUCTIBLE:**          Each Claim: $0          Aggregate: $0

5. **RETROACTIVE DATE:**  03/02/2010
   If a date is indicated, this policy will not provide coverage for any **Claim** arising out of any act, error, omission or personal injury which occurred before such date.

6. **ANNUAL PREMIUM:**                 $697.00

   TOTAL Premium and Taxes/Surcharge :    $697.00

7. **ENDORSEMENTS:**
   This policy is made and accepted subject to the printed policy form together with the following form(s) or endorsement(s).
   AP 00 0001 (06/11), AP 04 0001 (06/11), AP 21 0002 (06/11), AP 27 0004 (06/11), AP 01 0004CA (06/11),
   AP 20 0001 (06/11), AP 06 0005CA (06/2011).

8. **PRODUCER NAME:**  Mercer Consumer
   **STREET ADDRESS:**  P. O. Box 8146
   Des Moines, IA 50306-8146

                                                        _Carol Moore_
                                                   Authorized Representative

Producer Code: 26460                    Class Code: 73128
Date:   02/25/2015
AP 10 0001 06 11          © Copyright 2011, General Star Management Company, Stamford, CT          Page 1 of 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**1321 Post Avenue, Suite 201, Torrance, CA 90501**

A true and correct copy of the foregoing document entitled (*specify*):   **Notice of Motion and Motion to avoid the junior lien of junior lienor, under 11 USC Section 506(a) , including the motion and  supporting declarations and exhibits and proof of service on motion and the notice of motion.**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

The Honorable Julia W Brand, Courtroom 1375, 255 E Temple Street, Los Angeles, CA  90012

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)   **February 8, 2016**   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

    Nancy K Curry (TR)    ecfnc@trustee13.com
    Lisa B Singer    bkmail@rosicki.com
    Rebecca Tomilowitz    Rtomilowitz@aol.com
    United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On (*date*) **February 8, 2016**   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 8, 2016 | Rebecca Tomilowitz | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 4                    **F 4003-2.4.JR.LIEN.MOTION**

**II. SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)(Certified Mail required for service on a national bank.)*

| | Address from: | Delivery Method |
|---|---|---|
| 1st lienholder *(name and address)*<br><br>Seterus, Inc.<br>care of Wright, Finlay & Zak, LP<br>4665 MacArthur Court, Ste 280<br>Newport Beach, CA 92660<br>[address from POC]<br><br>Seterus, Inc.<br>3039 Cornwallis Road<br>Bldg 203, Ste AA145<br>Research Triangle Park, NC 27709<br>[address from the Sec of state] | ☑ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: billing statement | ☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 1st lienholder *(name)* and Servicing Agent *(name and address)*<br>**Seterus, Inc c/o**<br>**Federal National Mortgage**<br>**Association**<br>**PO Box 1047**<br>**Harford, CT 06143** | Address from:<br>☑ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☑ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 2nd lienholder *(name and address)*<br><br>Specialized Loan Servicing, LLC [SLS]<br>PO Box 105219<br>Atlanta, GA 30349-6219 | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☑ Other: **billing statement** | ☑ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)*<br><br>Specialized Loan Servicing, LLC [SLS]<br>Agent for service:<br>Capital Corporate Services, Inc.<br>c/o: The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>[certified mail-return receipt requested] | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)*<br><br>Specialized Loan Servicing, LLC [SLS]<br>attn: CEO or Corporate Officer<br>8742 Lucent Blvd, Ste 300<br>Highlands Ranch, CO 80129<br>[address with CA Secretary of State]<br>[certified mail-return receipt requested] | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                Page 5                    **F 4003-2.4.JR.LIEN.MOTION**